William R. SKELLEY and
Marilyn H. Skelley

v.

**ZONING BOARD OF REVIEW OF the
TOWN OF SOUTH KINGSTOWN
et al.**

No. 88–416–M.P.

Supreme Court of Rhode Island.

Feb. 13, 1990.

James V. Auckerman, Kenyon & Auckerman, Wakefield, for petitioners.

Karen R. Ellsworth, Providence, for respondents.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY, and SHEA, JJ.

## OPINION

KELLEHER, Justice.

This controversy is before us pursuant to this court's grant of a common-law writ of certiorari. The petitioners seek review of a Superior Court judgment affirming the denial of their request for a variance by the Zoning Board of Review of the Town of South Kingstown. The variance sought by the petitioners would have enabled them to build a single-family dwelling on a substandard lot.

In October 1980 petitioners purchased the subject property, a 23,925–square–foot parcel of land situated on Border Avenue in the Green Hill section of South Kingstown. The property had been platted in 1940 as lot No. 20, containing 12,325 square feet, and lot No. 22, containing 11,600 square feet. In 1961 a summer cottage was built on lot No. 20. The two-lot parcel is now designated as lot No. 46 on tax assessor's plat No. 90–3.

In March 1976 a comprehensive revision of the South Kingstown Zoning Ordinance was enacted. The subject property was zoned R–30, rendering lot Nos. 20 and 22 substandard. Pursuant to article 2, section 230, of the ordinance, a residential zoning classification of R–30 requires that each lot contain a minimum area of 30,000 square feet and a minimum frontage of 125 feet.

The 1976 general amendment also authorized the merger of contiguous nonconforming lots in common ownership. Section 421 of the zoning ordinance requires adjoining lots in common ownership that fail to meet the prescribed minimum-frontage and area restrictions to merge automatically to form one lot. The ordinance was amended five months prior to petitioners' purchase of the property and provides in pertinent part:

"Section 421—*Adjacent Non–Conforming Lots of Record Under the Same Ownership* (Amended 5–28–80) If two or more adjacent lots or parcels of land are under the same ownership on the effective date of this Ordinance, such lots shall be considered to be an undivided parcel of land for the purpose of this Ordinance, and no single lot or portion thereof shall be used in violation of the requirements of Section 230 as to lot width and area. If the total lot width or lot area of such adjacent lots of record is less than required by Section 230, such lots may be considered as a single nonconforming lot of record for single family residential purposes and shall be governed by the provisions of Section 420."

On September 26, 1986, petitioners applied for a "variance" from the requisite area and frontage requirements in order to construct a singlefamily residence on the unimproved portion of the property formerly known as lot No. 22. On December 15, 1986, the zoning board denied petitioners' request for a variance. The board found that the lots were merged in 1976 and that the single parcel with its 23,925 square feet of land could not be subdivided because it did not measure up to the 30,000–square–foot requirement.

The petitioners appealed the decision of the zoning board to the Superior Court pursuant to G.L.1956 (1980 Reenactment) § 45–24–20. On June 28, 1988, the trial justice upheld the board's decision. The trial justice found that in March of 1976, when the property at issue was rezoned, lot

No. 22 became a nonconforming lot of record pursuant to section 400(C) [1] and lot No. 20 became a nonconforming use pursuant to section 400(A).[2] The trial justice determined that this court's analysis in *Redman v. Zoning and Platting Board of Review of Narragansett*, 491 A.2d 998 (R.I. 1985), was applicable to the instant matter. Following *Redman,* the trial justice ascertained that "lot 20 stands alone as a prior non-conforming use which cannot be merged with lot 22." He further reasoned, "Since lot 22 cannot be merged with lot 20, it qualifies as a single non-conforming recorded lot pursuant to Section 420." [3] Construing Section 420 of the zoning ordinance, he found that lot No. 22 did not meet the conditions that would qualify it as buildable and he therefore upheld the board's decision.

When reviewing a decision of the Superior Court in its consideration of an appeal from a municipal zoning board, this court's concern is whether the trial justice acted within his or her authority as set forth in G.L.1956 (1988 Reenactment) § 45–24–20.[4] We shall not weigh the evidence but rather determine whether competent evidence exists to support the Superior Court justice's decision. We shall not reverse the decision below unless shown that the Superior Court justice "misapplied the law, misconceived or overlooked material evidence, or

made findings that were clearly wrong." *R.J.E.P. Associates v. Hellewell,* 560 A.2d 353, 354 (R.I.1989); *Lett v. Caromile,* 510 A.2d 958, 960 (R.I.1986); *Camara v. City of Warwick,* 116 R.I. 395, 407, 358 A.2d 23, 31 (1976).

This court subscribes to the trial justice's analysis that lot No. 22 became a nonconforming lot of record and lot No. 20 consisted of a nonconforming use when the zoning ordinance was amended in 1976. We are also of the opinion, however, that lot Nos. 20 and 22 merged while they were held in common ownership by petitioners' predecessors in title pursuant to section 421 of the ordinance. As a result of the merger, the zoning board's denial of petitioners' application for a variance to construct a second dwelling on the property consisting of 23,925 square feet is valid. Accordingly we affirm the trial justice's actions in upholding the board's decision.

The concept of merger of contiguous nonconforming lots in common ownership as an appropriate method to combine nonconforming lots is gaining increased recognition. *See* 2 Anderson, *American Law of Zoning* § 9.67 at 307 (3d ed.1986). Merger provisions frequently contain exceptions whereby a lot that is smaller than the minimum zoning requirements will be exempted from the merger rule if it was a lot

---

1. *"Non–Conforming Lot of Record* (Amended 7–10–78)—a lot of record when recorded was in full compliance with the Zoning Ordinance in effect at the time of recording or which was legally recorded prior to January 16, 1951, and which cannot conform to the area and dimensional regulations of this Ordinance."

2. *"Non–Conforming Use*—any use of land or of a structure which was lawfully in existence at the time of the adoption of this Ordinance or any amendments thereto, but which is not a permitted use or a use permitted by special exception by the district regulations of this Ordinance or any amendments thereto in the Zoning Districts in which such use is located."

3. "Section 420—*Single Non–Conforming Recorded Lots*
   (Amended 5–28–80)
   A lot or parcel of land having a lot width or lot area which is less than required by Section 230 may be considered buildable for single family residential purposes regardless of the lot width or lot area, provided such lot or

parcel of land was shown on a plat or on a deed duly recorded prior to the effective date of this Ordinance, and further provided that at the time of such recording the lot or parcel of land so created conformed in all respects to the minimum requirements of the Zoning Ordinance in effect at that time, and that said lot or parcel of land did not adjoin other land of the same owner on the effective date of the Ordinance (March 29, 1976) or at any time after such lot or parcel of land was rendered substandard by the provisions of any prior Zoning Ordinance."

4. This statute provides that a decision of a zoning board shall be reviewed by the Superior Court. General Laws 1956 (1988 Reenactment) § 45–24–20(d) states in part, "The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse * * * the decision if substantial rights of the appellant have been prejudiced because of * * * decisions which are * * * (4) affected by * * * error of law."

of record prior to the effective date of the zoning ordinance. Such an exception allows the landowner to develop a substandard lot only if the lot remains isolated and was under single ownership at the time the zoning ordinance was adopted. *R.J.E.P. Associates*, 560 A.2d at 356.

A controversy involving the issue of merger must be resolved by analyzing the language in the particular ordinance and the specific factual scenario in that dispute. The petitioners assert that the issues we addressed in *Redman* are legally indistinguishable from the instant case; therefore, this court's ruling in *Redman* is controlling in the case at bar. In *Redman* the petitioners owned five adjoining lots that were rendered substandard by a subsequent zoning amendment. One lot was developed, and the other four lots were unimproved. This court held that the developed lot was a lawful nonconforming use that could stand alone notwithstanding the merger provision in the Narragansett ordinance and that petitioners therefore were entitled to two building permits for the remaining four lots. 491 A.2d at 1000. We find the decision in *Redman* to be inapposite to the situation presently before us because the South Kingstown zoning ordinance and enabling legislation do not afford the same protections for nonconforming uses that were provided in the Narragansett ordinance at issue in *Redman*.

■ In 1973 the General Assembly enacted special zoning-enabling legislation for South Kingstown, P.L.1973, ch. 101, § 8, which provided that the South Kingstown zoning ordinance *"may* provide that any nonconforming use or structure *may* be continued upon the lot or in the building or structure so occupied." (Emphasis added.) Pursuant to the authority delegated by the General Assembly, South Kingstown's current zoning ordinance was enacted, which

provides in section 401: "Nonconforming uses are declared by this ordinance to be incompatible with permitted uses in the Zoning Districts in which such use is located. It is the intent of this ordinance to permit non-conforming uses to continue until they are removed or discontinued, but not to encourage their survival."

This court has recognized that special zoning-enabling legislation takes precedence over the provisions of the general zoning-enabling statute.[5] *Town of Johnston v. Barrett*, 100 R.I. 405, 216 A.2d 513 (1966). We find no merit in petitioners' argument that the South Kingstown Town Council exceeded its authority by enacting the current zoning ordinance because the consolidation of nonconforming lots is encouraged by the enabling legislation.

This court believes that the cottage located on the original lot No. 20 in the instant case does not preclude a merger of the two substandard lots at issue. The petitioners' two adjacent nonconforming lots were held under the same ownership on the effective date of the ordinance; therefore, they "shall be considered to be an undivided parcel of land" pursuant to section 421 of the ordinance. The resulting parcel consists of only 23,925 square feet, remaining substandard subsequent to the merger. Accordingly, petitioners' property is considered a single nonconforming lot of record for single-family-residential purposes. The petitioners' requested relief cannot be characterized simply as a variance from minimum lot size requirements because they are seeking to build a second dwelling on this substandard lot. This relief is precluded by section 301 of the ordinance, which provides, *"Number of Residential Structures Per Lot*—In any zoning district other than Residential–Multi–Family (RM), no more than one principal residential building shall be permitted on a lot,

---

5. The general enabling statute, § 45–24–10, provides, "No ordinance enacted under the authority of this chapter shall prevent or be construed to prevent the continuance of the use of any building or improvement for any purpose to which the building or improvement is lawfully devoted at the time of the enactment of the ordinance." In *A.T. & G., Inc. v. Zoning Board* *of Review of North Smithfield*, 113 R.I. 458, 463, 322 A.2d 294, 296–97 (1974), this court found that the Legislature, in enacting § 45–24–10, intended to proscribe the adoption of any provision in a zoning ordinance that is designed to prevent the continuance of nonconforming uses.

except in the case of motels, hotels and mobile home parks further provided in this ordinance."

■ The South Kingstown zoning ordinance does not delineate any specific relief from its merger provision. This court has observed that relief from area requirements may be granted as a deviation under *Viti v. Zoning Board of Review of Providence,* 92 R.I. 59, 166 A.2d 211 (1960), as an exception in circumstances in which a zoning ordinance so provides or as a variance under the general enabling legislation. *Sun Oil Co. v. Zoning Board of Review of Warwick,* 105 R.I. 231, 251 A.2d 167 (1969). South Kingstown's enabling legislation, P.L.1973, ch. 101, § 18, provides,

"The zoning board of review shall have the power to:

\*     \*     \*     \*     \*     \*

b) Grant a variance from the restrictions of the zoning ordinance other than use restrictions or requirements where:

1. The land or structure has an exceptional physical condition unique to the land or structure in the district or surrounding area and adherence to the requirements of the zoning ordinance would cause undue hardship; and

2. The variance would not substantially alter the character of the surrounding area or district or impair the intent and purpose of the zoning ordinance."

Section 521 of the South Kingstown zoning ordinance requires, "The applicant for a variance from the provisions of this Ordinance shall show \* \* \* unnecessary hardship." We have recognized that in order to prove unnecessary hardship, a petitioner must show by probative evidence that a literal application of the terms of the ordinance would deprive him of all beneficial use of his property. *Gaglione v. DiMuro,* 478 A.2d 573, 576 (R.I.1984).

In *Rozes v. Smith,* 120 R.I. 515, 388 A.2d 816 (1978), we held that the grant of a variance permitting the petitioners to convey 20,990 square feet of their property and retain a 20,440–square–foot parcel on which their residence was located was not

justified on the basis of unnecessary hardship when the zoning ordinance required a minimum of 40,000 square feet for a residential lot. This court reasoned, "A variance is not properly granted to insure personal convenience or a more profitable use of the property." *Id.* at 521, 388 A.2d at 820.

When confronted with somewhat similar circumstances in *Galdieri v. Board of Adjustment of Morris,* 165 N.J.Super. 505, 398 A.2d 893 (1979), the Appellate Division of the New Jersey Superior Court held an owner was required to combine two substandard lots notwithstanding that one lot was improved. The court affirmed the denial of a variance, concluding that no hardship existed simply because the petitioners could not sell the lot as one on which a home could be built. The court found that "they have an assemblage of two lots which is inherently susceptible of use as an integral home site." *Id.* at 510, 398 A.2d at 896. As in the cases cited above, the unimproved portion of petitioners' lot in the instant case adds value to the improved portion and remains available to enlarge the existing home and site. Consequently the enforcement of the merger provision in the South Kingstown zoning ordinance does not result in a deprivation of all beneficial use of petitioners' property.

■ The petitioners also contend that the 1976 zoning amendment applicable to their lot which requires 30,000 square feet per lot does not bear a sufficient relationship to the public health, safety, and welfare. As a general principle, amendments to zoning ordinances are presumed valid. If the amendment "reasonably relates to the public health, safety or welfare, then the comprehensive plan remains intact and the amendment is valid." *Mesolella v. City of Providence,* 439 A.2d 1370, 1374 (R.I.1982); *see also Consolidated Realty Corp. v. Town Council of North Providence,* 513 A.2d 1, 3 (R.I.1986). It is the burden of the challenging party to prove that the amendment is invalid. 439 A.2d at 1374.

It is obvious that petitioners failed to carry their burden of showing that the provision at issue in this litigation is unreasonable. On the contrary, at a hearing a member of the zoning board articulated that the nonexistence of a public sewer system was one reason the zoning was changed in this area. As a result each residence must have an individual sewage-disposal system that could have a detrimental impact on the quality of the groundwater and other bodies of water in this ocean-front environment. Accordingly we find petitioners' argument unpersuasive.

Finally petitioners assert their constitutional rights to due process and equal protection have been violated, claiming that the board "reversed previously established policy" with regard to treatment of similar applications for variances. The board's grant of such variances in the past, however, does not entitle petitioners to a variance on the basis of due process or equal protection.

It is undisputed that the petitioners were notified of the hearing on their request for a variance and that they were allowed an opportunity to be heard; therefore, their due-process claim is without merit. Additionally they have failed to invoke equal-protection guarantees because they have not shown that the denial of a variance in this case is without a rational basis.

For the reasons stated, the petition for certiorari is denied and the writ previously issued is hereby quashed. The record certified to this court is ordered returned to the Superior Court with our decision endorsed thereon.