DECISION
In the instant appeal, Julia and Raymond Hall (collectively Plaintiffs) request that this Court invalidate the April 22, 2002 amendment to Appendix B of the South Kingstown Zoning Ordinance (Zoning Ordinance), which permitted the age restricted manufactured home use as approved for Tuckertown Village to expand from the R-40[1] portion of the parcel, known as Lot 4 on Tax Assessor's Plat 60, to the contiguous R-80[2]
portion of that parcel, subject to various stipulations. Plaintiffs, who are landowners in the Town of South Kingstown, also claim that the amendment to the Zoning Ordinance constitutes a taking of their property and thus request just compensation. Plaintiffs further request attorney's fees. Tuckertown Village Park, LLC (Tuckertown), the applicant in the application for the amendment to the Zoning Ordinance, has been granted permission to intervene. Town Councilors of the Town of South Kingstown and Tuckertown (collectively Defendants) request that this court uphold the said amendment. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-71.
 FACTS/TRAVEL
Tuckertown is the owner and operator of an adult manufactured home park which is situated on a parcel of property located in South Kingstown on the southerly side of Worden's Pond Road, and designated as Lot 4 on Tax Assessor's Plat 60 (subject property). The subject property consists of approximately 246.7 acres of which approximately 69.92 acres are zoned R-80, and the balance is zoned R-40. The R-80 portion of the subject property lies in close proximity to Worden's Pond.
The manufactured home park, known as Tuckertown Village, was established around 1981, after the Zoning Board granted a special exception allowing manufactured homes on the R-40 portion of the subject property. The special exception contained several stipulations, which included that the park was to be expanded in phases; future development was subject to zoning board approval; and there could not be more housing units than would be permitted by the Zoning Ordinance for the entire parcel. Accordingly, development is capped at around 235 units. Between 1981 and 1997, the Zoning Board has approved 205 units. Since the Zoning Ordinance did not permit manufactured homes in a R-80 zone, all units are situated in the R-40 portion of the subject property; however, a storage area, which has been the subject of a zoning violation issued by the Building Official, is located on the R-80 portion of the subject property.[3]
Looking towards future phases of development, Tuckertown sought an amendment to the Zoning Ordinance which would allow the use of manufactured homes by special permit in the area designated as R-80. To that end, on August 5, 2001, Tuckertown simultaneously filed applications for an amendment to the Town of South Kingstown Comprehensive Community Plan (Comprehensive Plan) and for an amendment to the Zoning Ordinance, with regards to the R-80 portion of the subject property. Tuckertown sought through these applications to change the Comprehensive Plan designation of the R-80 portion of the subject property from Low Density Residential to Medium Density Residential and to change the zoning designation of the R-80 portion to R-40.
Tuckertown's applications were reviewed by the Technical Review Committee (TRC)[4] on December 27, 2001. The TRC was not in favor of allowing an increase in density in an area that was in close proximity to Worden's Pond, and thus suggested that Tuckertown consider alternatives to amending the Comprehensive Plan and changing the zoning designation. Acccordingly, on January 7, 2002, Tuckertown revised its application to amend the Zoning Ordinance and withdrew its application for an amendment to the Comprehensive Plan. Tuckertown's revised application proposed that the zoning designation remain R-80, and instead sought:
 "An amendment to Appendix B of the Zoning Ordinance ("Parcels Subject to Special Conditions of Previous Zoning Amendments") providing that the age restricted manufactured home use as approved for Tuckertown Village be allowed to expand from the contiguous R-40 portion of the parcel to the R-80 portion subject to all the conditions of the existing approval of Tuckertown Village for said use; and subject to the further limitation that the density of any development of the R-80 portion of the parcel be in no event greater than one dwelling per 80,000 S.F." (January 7, 2002 letter from William Landry to Town Clerk.)[5]
The TRC was generally supportive of the revised application and noted that "given the environmental characteristics of the land in question the expansion potential into the R80 portion of the lot is quite limited and unifying the zoning of the parcel under these circumstances would not be averse to the public interest." (See 1/17/2002 Planning Department Memorandum from Vincent Murray to Planning Board at 3.)
On January 22, 2002, the Planning Board considered Tuckertown's revised application at a public hearing. Discussion ensued regarding the possibility of an expansion of the storage area, buffer issues, and wetland/ISDS issues. At their February 12, 2002 meeting, the Planning Board voted to recommend that the Town Council approve Tuckertown's revised application. With regard to the Comprehensive Plan, the Planning Board found:
 "Said amendment is found to be consistent with the Comprehensive Community Plan as follows:
 A. Overall Goal of the Housing Element: `To encourage a range of housing choices in order that the Town can continue to be a home to a vital mix of people.'
 B. Housing Element Policy 1.1 — `The Town supports providing housing opportunities for people of varying ages, lifestyles, and stages of the life cycle, including: singles, couples, single parents, families, senior citizens, the handicapped, and students.'
 C. Housing Element, Policy 1.3 — `The Town supports providing housing opportunities for year-round renters, first time buyers, and homeowners who need or choose to change their living arrangements due to lifecycle and/or altered physical and financial capabilities.'" (February 12, 2002 Planning Board Minutes at 4.)
With regard to the purposes of zoning, the Planning Board found that
 "the proposed amendment is consistent with the following general purposes of zoning as contained in RIGL 45-24-47, Rhode Island Zoning Enabling Act of 1991 as amended. 1. `Promoting the public health, safety, and general welfare.' 8. `Promoting a balance of housing choices, for all income levels and groups, to assure the health, safety and welfare of all citizens and their right to affordable, accessible, safe and sanitary housing.'" Id.
The Planning Board also made the following "Recommended Conditions of Approval:"
 "(1) Any expansion of the age-restricted manufactured home use and associated accessory uses into the R80 zoned portions of AP 60, lot 4 shall be subject to the issuance of a special use permit by the Zoning Board of Review.
 (2) The permitted density on the entire site shall be in accord with the Zoning Board of Review limitation established on November 16, 1981.
 (3) No dwellings may be established within 800' of the southerly edge of the Worden's Pond Road right of way, which 800' shall serve as a buffer and may be altered to include accessory uses upon review by the Zoning Board and issuance of a Special Use Permit"
 (4) The Recreational Vehicle storage area on the westerly side of Leisure Drive shall not be expanded beyond its current size (27,176 square feet)." Id. at 5.
On March 25, 2002, the Town Council considered Tuckertown's revised application at a public hearing and had before it the recommendation of the Planning Board. Plaintiffs were present, and Plaintiff Raymond Hall brought up various issues at the meeting and then sent a letter to the Town Council which contained his analysis of Tuckertown's application. Special Counsel for the Town prepared responses to questions raised by Plaintiffs and by Town Council members. The public hearing continued on April 22, 2002, at which time the Town Council voted to approve Tuckertown's revised application, incorporating the Planning Board's Findings of Fact, Consistency with Comprehensive Plan, Consistency with the Purposes of Zoning, and Recommended Conditions of Approval.
On May 21, 2002, Plaintiffs filed this timely appeal of the April 22, 2002 amendment to the Zoning Ordinance. Plaintiffs request that this Court invalidate the amendment; award compensation for the alleged interference with their property rights, and grant attorney's fees and costs.
STANDARD OF REVIEW
This Court possesses appellate review jurisdiction of an amendment to a zoning ordinance pursuant to G.L. 1956 § 45-24-71, which is entitled "Appeals -Appeal of enactment or of amendment to zoning ordinance." That statute provides in pertinent part:
 "(a) An appeal of an enactment of or an amendment to a zoning ordinance may be taken to the superior court for the county in which the municipality is situated by filing a complaint within thirty (30) days after the enactment or amendment has become effective. The appeal may be taken by an aggrieved party or by any legal resident or landowner of the municipality or by any group of residents or landowners whether or not incorporated, of the municipality. The appeal shall not stay the enforcement of the zoning ordinance, as enacted or amended, but the court may, in its discretion, grant a stay on appropriate terms, which may include the filing of a bond, and make other orders that it deems necessary for an equitable disposition of the appeal.
 (b) The complaint shall state with specificity the area or areas in which the enactment or amendment does not conform with the comprehensive plan and/or the manner in which it constitutes a taking of private property without just compensation.
 (c) The review shall be conducted by the court without a jury. The court shall first consider whether the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan. If the enactment or amendment is not in conformance with the comprehensive plan, then the court shall invalidate the enactment or the amendment, or those parts of the enactment or amendment which are not in conformance with the comprehensive plan. The court shall not revise the ordinance to conform with the comprehensive plan, but may suggest appropriate language as part of the court decision.
 (d) In the case of an aggrieved party, where the court has found that the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan, then the court shall next determine whether the enactment or amendment works as a taking of property from the aggrieved party. If the court determines that there has been a taking, the court shall remand the case to the legislative body of the municipality, with its findings that a taking has occurred, and order the municipality to either provide just compensation or rescind the enactment or amendment within thirty (30) days."
Although G.L. 1956 § 45-24-50(a) provides that a municipality has the authority to amend its zoning ordinances through action by its town council, § 45-24-50(b) requires that any such amendments be consistent with the town's comprehensive plan. Accordingly, § 45-24-71
provides for a cause of action against the town council for an amendment of the town's zoning ordinance which is not in conformance with the Comprehensive Plan, and it entitles this Court to invalidate an zoning amendment which does not so conform.
This Court is mindful that our Supreme Court has held that "the amendment of a zoning ordinance is an exercise of a legislative function by a town council and it enjoys a presumption of legality . . . [which] can be overcome only by competent evidence." See Verdecchia v. JohnstonTown Council, 589 A.2d 830, 832 (R.I. 1991). Furthermore, the "presumption of validity includes the presumption that the zoning enactments were `in accordance with a comprehensive plan.'" D'Angelo v.Knights of Columbus Bldg. Ass'n, 89 R.I. 76, 83; 151 A.2d 495, 499 (R.I. 1959) (citations omitted). "If the amendment `reasonably relates to the public health, safety or welfare, then the comprehensive plan remains intact and the amendment is valid.'" Skelley v. Zoning Bd. of Review,569 A.2d 1054, 1058 (R.I. 1990) (citations omitted). Thus, in order to succeed with an appeal under § 45-24-71, a plaintiff must meet the burden of showing "the area or areas in which the enactment or amendment does not conform with the comprehensive plan and/or the manner in which it constitutes a taking of private property without just compensation." G.L. 1956 § 45-24-71(b); see also Skelley, 569 A.2d at 1058 (holding that "[i]t is the burden of the challenging party to prove that the amendment is invalid").
 THE AMENDMENT
When considering an appeal pursuant to § 45-24-71, this Court must apply a two part analysis. First, the Court must consider whether the "amendment of the zoning ordinance is in conformance with the comprehensive plan." G.L. 1956 § 45-24-71(c). If the amendment is not in conformance with the Comprehensive Plan, this Court may invalidate it. See id. Second, if this Court finds that the amendment is in conformance with the town's Comprehensive Plan, "then the court shall next determine whether the enactment or amendment works as a taking of property from the aggrieved party." G.L. 1956 § 45-24-71(d).
Plaintiffs have advanced several arguments in support of their appeal. Specifically, Plaintiffs argue that the Planning Board's recommendation to the Town Council regarding the amendment failed to include the findings required by G.L. 1956 § 45-24-52; that Tuckertown failed to follow the proper procedures for approval; that the amendment is not in conformance with the Comprehensive Plan; and that the amendment constituted illegal spot zoning. Plaintiffs also argue that the amendment constituted a taking. This Court addresses each argument below.
 Planning Board Recommendation
In support of their appeal, Plaintiffs argue that the Planning Board did not comply with the provisions of § 45-24-52. That section provides that the Planning Board's recommendation concerning an amendment to a zoning ordinance should "(1)[i]include a statement on the general consistency of the proposal with the comprehensive plan of the city or town, including the goals and policies statement, the implementation program, and all other applicable elements of the comprehensive plan" and "(2) [i]nclude a demonstration of recognition and consideration of each of the applicable purposes of zoning, as presented in § 45-24-30." According to Plaintiffs, the Planning Board failed to consider the sixteen purposes of zoning, but rather considered only two of the purposes. Plaintiffs also argue that the Planning Board's recommendation did not address whether the amendment was in conformance with the goals and policies statement of the Comprehensive Plan and that the recommendation ignored the implementation program.
Conversely, Defendants argue that the Planning Board's statement was sufficient. However, Defendants argue that any insufficiency in the Planning Board's recommendation does not affect the validity of the amendment.
This Court notes that although the Planning Board's recommendation could have been more detailed, it was sufficient to comply with the requirements of § 45-24-52. That statute does not require the Planning Board to address every purpose of zoning; rather it requires only "demonstration of recognition and consideration of each of theapplicable purposes of zoning." (emphasis added). Furthermore, when the Planning Board's recommendation is read in its entirely, this Court finds that the Planning Board addressed the requisite aspects of the Comprehensive Plan.
Moreover, pursuant to § 45-24-71, this Court is entitled to invalidate a zoning amendment only if it is not in conformance with the Comprehensive Plan. Thus, even if this Court were to find that the Planning Board's recommendation did not meet the requirements of §45-24-52, Plaintiffs have not directed this Court to any portion of the Comprehensive Plan which would be violated by any such failure on the part of the Planning Board. Accordingly, Plaintiffs have not met their burden.
 Precedence of Approvals
Plaintiffs further argue that Tuckertown failed to follow the proper procedures in obtaining the amendment. Plaintiffs argue that the amendment was approved in violation of § 505.1 D(5) of the Zoning Ordinance[6]
since Tuckertown did not undergo the requisite Development Plan Review, and thus the Town Council approved the amendment without the Planning Board's Development Plan Review recommendation. According to Plaintiffs, pursuant to § 505.1 B(2)(a) of the Zoning Ordinance[7], the storage facility located in the R-80 portion constituted a redevelopment of a previously existing use as it was the relocation of a parking facility that had been previously located in the R-40 portion of the subject premises and it enlarged a previously existing off-street parking facility. Defendants argue that § 505.1 D(5) of the Zoning Ordinance is not applicable to Tuckertown since the storage facility, which was already in existence at the time that Tuckertown sought an amendment, is not subject to Development Plan Review.
This Court's review of the record reveals that the storage facility in the R-80 portion of the subject premises was in existence prior to the application for the amendment, the application did not seek to expand the storage facility, and the Town Council prohibited the expansion of the facility. Thus, since the existing storage facility is not "being changed, redeveloped, reconstructed, relocated, or enlarged," it is not subject to Development Plan Review pursuant to § 505.1 B(2).
 Conformance with Comprehensive Plan
In their complaint, Plaintiffs assert that the amendment, which "permitted development on the open space buffer in the R-80 portion of the lot that had been identified by the Zoning Board of the Town of South Kingstown as an area of critical concern and a natural resource of the Town of South Kingstown for over two decades," violates several sections of the Comprehensive Plan. First, Plaintiffs argue that the amendment violates the Regulatory aspect of the Natural Resources Element of the Comprehensive Plan, which provides that
 "A town's zoning and subdivision regulations are its strongest method of controlling land use. A comprehensive land use plan can be realized in large measure by implementing the zoning ordinance. Therefore, the zoning regulations and map must reflect the goals and policies of this Comprehensive Plan. South Kingstown's Land Use Plan and Zoning Ordinance, and other environmental and land use regulations, should address such issues as critical resource protection, ground water protection, wetlands protection, erosion and sediment control, storm water management, and open space preservation." Comprehensive Plan at Element V § C(1), p. 40
Plaintiffs next assert that the amendment also violates several goals and policies of the Natural Resources Element of the Comprehensive Plan. According to Plaintiffs, the amendment violates the Overall Goal of the Natural Resources Element of the Comprehensive Plan, which is "to preserve, protect, and enhance the Town's natural resources, many of which are not renewable." Id. at Element V § D(2), p. 45. The Comprehensive Plan further provides that "preservation and protection strategies should be comprehensive and proactive." Id. Plaintiffs also argue that the amendment violates Goal 4 of the Natural Resources Element, which is "[t]o protect and to preserve other natural resource areas within the Town." Id. at p. 51. Plaintiff further argue that the amendment is in violation of Policy 4.1 of the Natural Resources Element, which provides that the "Town recognizes that areas of critical concern, or environmental sensitivity, need protection. Such factors as groundwater resources, wetland functions, rare and endangered species habitat value, and agricultural/open space value will be considered a priority in identifying areas for protection." Id. Finally, Plaintiffs argue that the amendment violates Element II § I (3) of the Comprehensive Plan, which provides that with regards to state lands, the "Land Use Plan does not propose changes to the use of any of these lands, nor land abutting these lands." In short, Plaintiffs argue that the development permitted by the amendment violates the Comprehensive Plan's goals and policies of protecting environmentally sensitive areas.
After a careful review of the record, this Court finds that the amendment does not violate the Comprehensive Plan. The Comprehensive Plan designation of the R-80 portion of the subject premises is Low Density Residential. See Comprehensive Plan at Map 2.3. According to the Comprehensive Plan, Low Density Residential districts may contain environmentally sensitive areas and wetlands. See Comprehensive Plan at Element II § F(2)(a)(4), p. 46. This Court's review of the Comprehensive Plan revealed that the Comprehensive Plan also provides for the more restrictive Very Low Density Residential/Open Space district, which has a primary purpose of providing protection to sensitive environmental resources and thus limits residential density to less than .55 dwelling units per acre to discourage the conversion of open space to more intensive uses. See id. at Element II § F(2)(a)(5), p. 46. However, despite the existence of the Very Low Density Residential/Open Space district, the Comprehensive Plan has not so designated the R-80 portion of the subject property, but has rather designated the R-80 portion of the subject property as Low Density Residential. This Court notes that even though a Low Density Residential district may contain environmentally sensitive areas and wetlands, the Comprehensive Plan still permits development in the district. See id. at Element II § F(2)(a)(4), p. 46. However, the Comprehensive Plan limits density in a Low Density Residential district, and it provides that a Low Density Residential district has an average density of .55 to 1.08 dwellings per acre, and the lot sizes for single family detached dwellings in this district is 40,000 to 80,000 square feet. See id.
In the instant case, the amendment provides that lot sizes must be at least 80,000 square feet. Thus, since the amendment limits density to the level of density permitted in a R-80 Low Density Residential district, this Court finds that the amendment conforms with the Comprehensive Plan with respect to development of areas which include environmentally sensitive areas and wetlands. Additionally, the amendment addresses wetland protection and open space preservation in that it prohibits any dwellings within 800 feet of the southerly edge of the Worden's Pond right of way, and requires that the 800 foot area serve as a buffer. Furthermore, the amendment provides additional protection to the area by requiring that any expansion be subject to prior conditions and subject to the issuance of a special permit by the Zoning Board of Review.
Based upon the above, this Court finds that the amendment is in conformance with the Comprehensive Plan. Thus, this Court will not invalidate the amendment.
 Spot zoning
Plaintiffs also argue that the singling out of the subject property constitutes illegal spot zoning. Defendants argue that Plaintiffs cannot prove that the amendment violates the Comprehensive Plan, and thus the amendment does not constitute illegal spot zoning.
Our Supreme Court has defined spot zoning as the "special and limited treatment of a small area inconsistent with the treatment accorded to the surrounding property." D'Angelo v. Knights of Columbus Bldg. Ass'n,89 R.I. 76, 83; 151 A.2d 495, 499 (R.I. 1959). This Court notes that the treatment of the subject premises was not inconsistent with that of the surrounding property. Rather, this Court's review of the record reveals that age restricted manufactured homes are located on the contiguous R-40 portion of the subject premises. However, assuming arguendo that the amendment constituted spot zoning, "[t]here is valid spot zoning and invalid spot zoning. The fact that a small portion of land is involved in a legislative action does not make it ipso facto illegal spot zoning."Carpionato v. Town Council of North Providence, 104 R.I. 490, 494-95;244 A.2d 861, 863 (R.I. 1968) Instead, the "crucial test for determining if an amendment to a zoning ordinance constitutes illegal spot zoning depends upon whether its enactment violates a municipality's comprehensive plan." Id. Thus, since this Court has not found the amendment to violate the Comprehensive Plan, the amendment does not constitute illegal spot zoning.
 TAKING
Since this Court has determined that the amendment is in conformance with the Comprehensive Plan, this Court must determine whether the amendment constituted a taking of Plaintiffs' property. Plaintiffs argue that the value of their house has been reduced as a result of the amendment. Plaintiffs also argue that the amendment resulted in fines not being collected with regard to the storage facility, and that they, as taxpayers, were adversely affected by the loss of such funds. Thus, Plaintiffs seek compensation from the Town for their losses.
The Rhode Island Supreme Court held that a "regulatory taking may result from `a radical curtailment of a landowner's freedom to make use of his or her land; that is, by regulatory action which is neither a physical invasion nor a physical restraint.'" Alegria v. Keeney,687 A.2d 1249, 1252 (R.I. 1997) (citations omitted). Regulatory takings are "(1) `regulations that compel the property owner to suffer a physical `invasion' of his property' and (2) `regulations that deny all economically beneficial or productive use of land.'" Woodland Manor IIIAssocs. v. Keeney, 713 A.2d 806, 811 (R.I. 1998) (quoting Lucas v. SouthCarolina Coastal Council, 505 U.S. 1003, 1015; 112 S.Ct. 2886, 2893; 120 L.Ed.2d 798, 812-13 (1992)). A zoning ordinance that "deprives an owner of all beneficial use of his property is confiscatory and requires compensation." Annicelli v. South Kingstown, 463 A.2d 133, 139 (R.I. 1983). In the instant case, the amendment has not resulted in a physical invasion of Plaintiff's property. Nor has it deprived Plaintiffs of all economically beneficial or productive use of land. Thus, this Court finds that the amendment did not constitute a taking of Plaintiffs' property, and Plaintiffs are not entitled to any compensation.
 ATTORNEY'S FEES
Plaintiffs have requested attorney's fees. This Court has discretion to grant attorney's fees pursuant to § 45-24-71(f) which provides: "[t]he court may, in its discretion, upon the motion of the parties or on its own motion, award reasonable attorney's fees to any party to an appeal, including a municipality." However, in light of this Court's decision, validating the subject amendment, this Court declines to award attorney's fees to Plaintiffs.
 CONCLUSION
Based upon the reasons set forth above, this Court upholds the April 22, 2002 amendment to Appendix B of the South Kingstown Zoning Ordinance, which permitted the age restricted manufactured home use as approved for Tuckertown Village to expand from the R-80 portion of the parcel known as Lot 4 on Tax Assessor's Plat 60, to the contiguous R-80 portion of that parcel, subject to various stipulations. Furthermore, this Court finds that the amendment did not constitute a taking of Plaintiffs' property. Finally, Plaintiffs' request for attorney's fees is denied.
Counsel for Defendants shall submit the appropriate judgment for entry.
[1] R-40 zoning districts are located within the Medium Density Residential District and allow a residential density of up to 1 dwelling per acre. The minimum lot size for single-household detached dwellings is 40,000 square feet. See South Kingstown Zoning Ordinance § 101 A. This district includes areas which are environmentally sensitive and may contain much of the Town's wetlands and prime agricultural areas. Seeid.
[2] R-80 zoning districts are located within the Rural Residential Low Density District and allow a residential density up to 0.55 dwellings per acre. The minimum lot size for single-household detached dwellings is 80,000 square feet. See South Kingstown Zoning Ordinance § 101 A. This district may include open space, conservation lands, land unsuitable for development, and areas within the High Flood Danger (HFD) Overlay District. See id.
[3] The April 22, 2002 zoning amendment rendered the violation moot.
[4] The Technical Review Committee (TRC), a committee appointed by the Planning Board, is entitled to review a zone change amendment upon referral from the Planning Board. See Town of South Kingstown Subdivision and Land Development Regulations Article XI B 1-3. TRC recommendations are advisory and not binding on the Planning Board. See id. Rather, it is the Planning Board that must make the final recommendation to the Town Council regarding zoning changes. See id.
[5] Approval of this amendment would allow manufactured homes on the R-80 portion of the parcel, but would continue to require conformance with R-80 density requirements.
[6] Section 505.1 D(5) of the Zoning Ordinance provides:
 "Any uses or facilities listed in Section 505.1(B) requiring a special use permit, a variance, a zoning ordinance amendment and/or a zoning map change under the Zoning Ordinance shall be subject to development plan review conducted by the TRC or Planning Board prior to the hearing of the permitting authority, provided that such review shall be advisory to the permitting authority. If the permitting authority is required by this Ordinance or by any other applicable provision of law to conduct a public hearing on said application within a prescribed period of time, the permitting authority shall not close the public hearing and shall not act upon the application until such time as a recommendation has been received from the TRC or Planning Board."
[7] Section 505.1 B(2) of the Zoning Ordinance provides in pertinent part:
 "Redevelopment of Existing Uses — Existing uses specified in Sub Section B1 above shall be subject to development plan review under the provisions of this Section whenever such use is being changed, redeveloped, reconstructed, relocated, or enlarged as follows:
 a. To enlarge an off-street parking or loading facility;"