DECISION
In this administrative appeal and related civil action, Nancy I. Log challenges the unanimous Decision of the Zoning Board of Review of the Town of Charlestown. In that Decision, the Zoning Board of Review of the Town of Charlestown upheld a Decision of the Charlestown Building and Zoning Official finding that two lots owned by Ms. Log, Assessor's Plat 27, Lots 32 and 32-1, were contiguous substandard lots under the same ownership, and had therefore merged by operation of law under Article VI § 218-33 B (1) of the Charlestown Zoning Ordinance. For the reasons set forth in this Decision, this Court affirms the Decision of the Board and denies Ms. Log's Motion for Summary Judgment on Counts II through VI of her Complaint. *Page 2 
 I FACTS AND TRAVEL
The material facts of this case are not in dispute and have been stipulated to by the parties. In 1997, Ms. Log purchased two contiguous, legal non-conforming lots, Lots 32 and 32-1 on Assessor's Map 27 ("Lot 1" and "Lot 2", respectively), in Charlestown, Rhode Island. (Stipulated Facts at 1, 6). Lot 1 is a 1.25 acre parcel upon which Ms. Log and her husband lived; it was owned by Mr. and Ms. Log as tenants by the entirety. Id. at 2, 4, 8. Lot 2 is a .45 acre parcel of undeveloped land that Ms. Log held for investment; it was owned by Ms. Log in her name alone. Id. at 5; Aff. Nancy Log at 9.
In 2004, Mr. Log was unexpectedly killed in a tragic and unfortunate accident. (Stipulated Facts at 8). Prior to Mr. Log's death, Lots 1 and 2, although they were contiguous substandard lots, had not been susceptible to merger under the Ordinance because they remained under separate ownership. Ordinance § 218-33. Upon Mr. Log's death, the ownership of Lot 1 vested in Ms. Log alone, as the surviving tenant of the tenancy by the entirety. When Ms. Log became the sole owner of both lots, those lots became contiguous substandard lots under single ownership. Under the Town's merger provision, contiguous substandard lots under single ownership merge by operation of law. See
Ordinance § 218-339(B)(1), which states:
 B. Contiguous Substandard Lots.
 (1) On the basis of the lack of public infrastructure in all districts, when two or more contiguous lots are under single ownership, such lots shall be considered to be a single lot and no portion thereof shall be used in violation of any of the requirements of § 218-21, Dimensional regulations. *Page 3 
 (2) No lots contiguous to each other and under single ownership shall be subdivided in a manner below the requirements fixed by this ordinance.
 Id.
For the next five (5) years, Ms. Log remained unaware that her lots had merged — they continued to be assessed as separate lots for tax purposes, and Ms. Log continued to pay taxes on both lots. (Stipulated Facts at 9, 11-12). It was not until 2009 that Ms. Log learned from the Town's Building Official that her lots had merged by operation of law upon the death of her husband. Id. at 9. On November 18, 2009, the Building Official issued an official notice of the merger to Ms. Log. Id. at 16. Ms. Log appealed that Decision to the Zoning Board which, on January 21, 2010, upheld the Building Official's Decision. The Board, although sympathetic to Ms. Log's position, noted that it was required to apply the merger provision as it was written. Id. at 19; Board's Decision.
Ms. Log thereafter filed the instant action, appealing the Board's Decision (Compl. Count I), and asserting that the merger provision violated her right to due process under the Federal Constitution and State Constitutions (Compl. Counts II, III), and constituted a taking under the Federal Constitution. (Compl. Count IV). In addition, Ms. Log sought injunctive and equitable relief. (Compl. Counts V, VI).
 II STANDARD OF REVIEW
Superior Court review of zoning board decisions is governed by G.L. 1956 § 45-24-69(d). That section provides:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the *Page 4 
zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing questions of law, this Court conducts a de novo
review. Tanner v. Town Council, 880 A.2d 784, 791 (R.I. 2005). In reviewing questions of fact, it is the job of the trial justice to "examine the entire record to determine whether `substantial' evidence exists to support the board's findings." DeStefano v. Zoning Bd. OfReview of Warwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979) (superseded by statute, G.L. 1956 § 45-24-41 — only as it "relate[s] to the burden of proof required to authorize the granting of a dimensional variance" — in Sciacca v. Caruso, 769 A.2d 578, 583 (R.I. 2001). "Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to `more than a scintilla but less than a preponderance.'"Lischio v. Zoning Bd. Of Review of the Town of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George ShermanSand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). *Page 5 
 III LAW AND ANALYSIS A. Zoning Board Appeal
Section 45-24-38 of our General Laws permits a town to make provisions "for the merger of contiguous unimproved, or improved and unimproved, substandard lots of record in the same ownership[,]" so long as the ordinance specifies "the standards, on a district by district basis, which determine the mergers." Id. "[T]he availability of infrastructure,"[1] which the Charlestown ordinance specifies as the basis for its merger provision, is specifically cited by § 45-24-38 as one of the permissible standards a town might employ.Id.; Ordinance § 218-33(B)(1). In 1990, our State Supreme Court recognized that such provisions were "gaining increased recognition."Skelley v. Zoning Bd. of Review of the Town of South Kingstown,569 A.2d 1054, 1056 (R.I. 1990). Today, such provisions can be found throughout the cities and towns of our state.
Charlestown's merger provision is unambiguous, setting forth the basis and specifically detailing the conditions under which properties within the town will become susceptible to merger. It has been well established that "[w]hen the Legislature has spoken clearly, this Court will not infer a contrary result. `It is not the function of this [C]ourt to rewrite or to amend statutes enacted by the General Assembly.'" In reProposed Town of New Shoreham Project,2011 WL 2620378, 23 (R.I. 2011) (quoting Pierce v. Pierce,770 A.2d 867, 872 (R.I. 2001)). This rule is equally applicable in the context of a town or municipal ordinance. See Arena v. City ofProvidence, 919 A.2d 379, 393 (R.I. 2007), *Page 6 
in which our Supreme Court, interpreting a Providence ordinance, noted that "[u]nder the guise of construction, the court will not rewrite the law, add to it what has been omitted, omit from it what has been inserted, or give it an effect beyond that gathered from the plain and direct import of the terms used." Id.
(internal quotations omitted) (citation omitted).
The undisputed facts on the record demonstrate that upon the death of Ms. Log's husband, Lots 1 and 2 became contiguous substandard lots under single ownership, which, under § 218-33(B)(1), "shall be considered to be a single lot[.]" The Zoning Board's Decision upholding the Building Official's Decision that Ms. Log's lots had merged by operation of law was not arbitrary or capricious, clearly erroneous in view of the record evidence, in excess of its authority, made upon unlawful procedure, or affected by other error of law. On the contrary, it represents a proper interpretation and application of the Ordinance to the facts of this case.
Ms. Log's due process and takings challenges are likewise without merit. "Generally, merger provisions dictate that `contiguous substandard lots under common ownership may lose their separate identity and be treated as a single parcel[.]'" Arden Rathkopf and Daren Rathkopf, The Law of Zoning andPlanning § 32.04 (4th ed. 1998). Such provisions, despite numerous due process and takings challenges, generally pass constitutional muster. Id. See also Skelly, 569 A.2d 1054.
In the instant case, Ms. Log asserts that her situation is unique in that the operation of the merger provision upon the unexpected death of her husband deprived her of notice that her properties would be merged. While Ms. Log's situation is both tragic and unfortunate, a properly adopted merger provision is notice to all current and future *Page 7 
owners of substandard contiguous lots. Maron v. North ProvidenceZoning Board of Review, No. PC 04-5415, 2006 WL 951374 *3 (R.I. Super. Ct. April 12, 2006) (Darigan, J.) (citing Skelly, 569 A.2d at 1056). Ms. Log has neither asserted nor provided any evidence to establish that the Town's merger provision was not properly enacted.
Furthermore, an essential part of a tenancy by the entirety is that upon the death of one tenant, the property vests in the surviving tenant. The property ownership plan in which Mr. and Ms. Log chose to own Lots 1 and 2 successfully prevented the merger of those properties from the time of their purchase in 1997 to the time of her husband's death in 2004. That plan, however, failed to anticipate what effect the sudden and unexpected death of Ms. Log's husband would have upon the properties. That Ms. Log did not anticipate this chain of events, while both understandable and tragic, does not amount to a violation of her due process rights. Ms. Log's situation, with regard to due process, is no different than that of any other land owner.[2]
Additionally, Ms. Log asserts that the merger provision amounts to a compensable taking of her property. In DiMillio v. Zoning Board ofReview of the Town of South Kingstown, 574 A.2d 754 (R.I. 1990), our Supreme Court addressed this very issue. The plaintiff inDiMillio owned two contiguous lots. He resided on one of the lots and maintained the other, a nonconforming lot, in an undeveloped condition for investment. When he applied for a building permit for the undeveloped lot, the permit was denied on the ground that his lots had merged as they were contiguous substandard *Page 8 
lots under single ownership. Ms. Log sought a variance from the merger provision but was denied. Upon appeal, our Supreme Court, in considering whether the merger constituted a compensable taking, stated:
 [W]e do not believe that petitioner has been deprived of all use of the vacant lot. Hence the ordinance does not, in effect, constitute a taking. The allegation that the land could be put to a more profitable use does not alone satisfy the requirement of unnecessary hardship. Rhode Island Hospital Trust National Bank v. East Providence Zoning Board of Review, 444 A.2d 862, 864 (R.I. 1982) (citing Rozes v. Smith, 120 R.I. 515, 388 A.2d 816 (1978)). The unimproved portion of petitioner's lot adds value to the lot with the existing dwelling, and the vacant lot remains available to enlarge the existing home. Skelley, 569 A.2d 1054 (R.I. 1990). "[A] property owner does not have a vested property right in maximizing the value of his property." Annicelli v. Town of South Kingstown, 463 A.2d 133, 140 (R.I. 1983).
DiMillio, 574 A.2d at 756-757 (internal citations retained).
Ms. Log's circumstance in the instant case is substantially similar to that of the plaintiff in DiMillio. While the merger of Lots 1 and 2 may have inhibited Ms. Log from maximizing the value of her property, she is not deprived of all beneficial use of the vacant lot. For this reason, this Court finds that the merger of Lots 1 and 2 does not constitute a compensable taking under the federal constitution.Id.
Finally, Ms. Log has asked this Court to reverse the Zoning Board's Decision based on equitable principles. The grounds upon which this Court may reverse a zoning board's decision have been strictly set forth under § 45-24-69(d). While this Court is sympathetic to Ms. Log's unfortunate situation, [3] it is not within the authority of this *Page 9 
Court to rewrite statutes, and read additional provisions into § 45-24-69(d) that the General Assembly chose not to include.Pierce, 770 A.2d at 872.[4]
For the reasons set forth above, this Court finds that the Zoning Board's Decision, upholding the Decision of the Building Official, was not in violation of constitutional provisions, nor was it arbitrary or capricious, clearly erroneous in view of the record evidence, in excess of authority, made upon unlawful procedure, or affected by other error of law. For all of these reasons, this Court therefore affirms the decision of the Zoning Board.
 B. Ms. Log's Motion for Summary Judgment
Under Super. Ct. R. Civ. P. 56(c), a party moving for summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." For the reasons set forth above, this Court finds that Ms. Log has not demonstrated that she is entitled to judgment as a matter *Page 10 
of law. Ms. Log's Motion for Summary Judgment on Counts II through VI of her Complaint is therefore denied.
 IV CONCLUSION
For the reasons set forth above, the Decision of the Board is hereby affirmed and Ms. Log's Motion for Summary Judgment is hereby denied.
[1] Infrastructure is defined as "Facilities and services needed to sustain residential, commercial, industrial, institutional, and other activities." R.I.G.L. § 45-24-31 (36).
[2] Ms. Log's argument that the Town's failure to notify her of the merger until five (5) years later prevented her from taking advantage of the ability under Ordinance § 218-33(E) to restore "a lawful nonconforming use that is destroyed by accident or by an act of God," in addition to suffering the same flaw as Ms. Log's due process claims generally, is further flawed in that § 218-33(E) is inapplicable to Ms. Log's situation. The plain language of that section is incongruous with the facts of this case, as that section makes specific references to the location, total floor area, and performance of normal maintenance work on the lawful nonconforming use. Ms. Log has provided no support that this section is applicable here.
[3] Ms. Log suggests that the sudden passing of her husband makes her uniquely situated as she had no opportunity to prepare for the merger, unlike the buyer who knows of the merger ordinance which is already in effect at the time of purchase, or the property owner who owns separate lots while a merger ordinance is proposed and passed. While each property owner in those examples may have been able to avoid the merger, a merger ordinance was in effect prior to the purchases by Mr. and Ms. Log. Instead of placing one lot a separate entity, they decided to place Ms. Log's name on all lots, and Mr. Log's on only one, in the hope that the properties would not merge. While this may have been an efficient, economical attempt to avoid merger, Mr. Log's untimely passing — not the action of the town — defeated their plan.
[4] The Court is mindful and sympathetic to the situation which Ms. Log is in. However, it is this Court's role to adjudicate the law, as established by the legislature. As our High Court has declared:
 Having made that determination as to the statute's unambiguous meaning, our role is at an end; we have no constitutional authority to extend the scope of this or any other statute. . . .
 The role of the judicial branch is not to make policy, but simply to determine the legislative intent as expressed in the statutes enacted by the General Assembly. . . .
We know that sometimes our decisions result in palpable hardship to the persons affected by them. It is, however, a fundamental principle of jurisprudence that a court has no power to grant relief in the absence of jurisdiction, as is true in the instant case. Ours is not a policy-making branch of the government. We are cognizant of the fact that this observation may be cold comfort to the parties before us. But, if there is to be a remedy to this predicament, fashioning such a remedy would fall within the province of the General Assembly. Chambers v.Ormiston, 935 A.2d 956, 961-7 (R.I. 2007), citations and quotations omitted. *Page 1