**Richard A. CURRAN et al.**

v.

**CHURCH COMMUNITY HOUSING CORPORATION et al.**

**No. 95–644–Appeal.**

Supreme Court of Rhode Island.

March 15, 1996.

Joseph R. Palumbo, Jr., Middletown, for Plaintiffs.

Kathleen Managhan, Turner C. Scott, Newport, for Defendants.

**OPINION**

PER CURIAM.

This matter came before the Supreme Court on January 26, 1996, pursuant to an order granting the motion of the respondent,

Church Community Housing Corporation (CCHC), for expedited consideration of this appeal from a decision of the Zoning Board of Review of the Town of Middletown (the zoning board or board).

The zoning board had granted CCHC's application for a special exception to the town's zoning ordinance permitting it to create a fifty-unit housing development for the elderly. In granting the application, the board acted pursuant to the Rhode Island Low and Moderate Income Housing Act (the act), G.L.1956 § 45–53–1, enacted as P.L. 1991, ch. 154 § 1. The act's purpose is "to provide for housing opportunities for low and moderate income individuals and families in each city and town of the state." Section 45–53–2. The act accomplishes this purpose by authorizing local zoning boards to entertain requests for zoning relief made by organizations proposing to build subsidized housing as applications for special exception. Section 45–53–4. The board may deny such requests

> "only if the proposal is inconsistent with local needs, including, but not limited to, the needs identified in an approved comprehensive plan, and local zoning ordinances and procedures promulgated in conformance with the comprehensive plan; if the proposal is not in conformance with the comprehensive plan; if the community has met or has [other] plans to meet the standard of ten percent (10%) of the units being low and moderate income housing; or if concerns for the environment and the health and safety of current residents have not been adequately addressed." *Id.*

In 1994 Middletown adopted a Comprehensive Community Plan and Zoning Ordinance (comprehensive plan or plan). However, at the time the zoning board held a public hearing on the CCHC proposal, Middletown had not yet amended its zoning map to implement its comprehensive plan. Apparently the zoning ordinance designating Middletown's use districts had last been extensively amended in 1985. It was represented to this court that only technical amendments were made to the ordinance in 1994 to bring it into conformity with new statewide enabling legislation.

The comprehensive plan recognized the need to increase the availability of low- and moderate-income housing to represent, at a minimum, 10 percent of Middletown's housing inventory. The plan specifically noted that CCHC was working with the town to achieve this 10 percent minimum. Middletown's present zoning ordinance permits multifamily dwelling projects in excess of six dwelling units per lot only in residential multifamily zoning districts. Uncontradicted expert testimony established that the town's residential multifamily districts are currently taken up with existing apartment complexes, leaving no place within the town where CCHC's proposed development could be located as of right. Evidence also established that although the proposed-subject site is currently located in an office-business zoning district, the land use map in the town's comprehensive plan changes this zoning district to medium-diversity residential.

The record also reflects that CCHC's proposal to renovate an existing building situated on 4.6 acres of land does not change the building's footprint. Consequently no approval for changes such as setbacks and lot coverage is needed. The building's existing parking facilities exceed ordinance requirements presently in force, and it was uncontradicted that the area's mixed-use character would not be adversely affected by the location of the proposed development. The evidence also indicated that the project posed no risks to the environment or to the health, safety, or welfare of the town's residents.

■ Although no standard of review is specifically provided for in chapter 53 of title 45, our standard of review is analogous to that applied by the Superior Court in considering appeals from local zoning boards of review pursuant to G.L.1956 § 45–24–69, as enacted by P.L.1991, ch. 307, § 1. In respect to such appeals the Superior Court may "not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact." Section 45–24–69(D). The court may reverse the decision of the zoning board, however, "in the event that the decision violated constitutional or statutory provisions, that it was made in excess of statutory authority or made upon

an unlawful procedure or error of law, was clearly erroneous in view of the evidence, or was [otherwise] arbitrary or capricious." *United Cerebral Palsy of Rhode Island, Inc. v. Town of Johnston,* No. 95–116–A. (order, R.I., filed March 23, 1995); *see also Berberian v. Department of Employment Security,* 414 A.2d 480, 482 (R.I.1980).

■ Applying this standard to the present case, we are of the opinion that the zoning board acted within its authority in granting approval of the proposed project. After a careful review of the evidence, the zoning board found that the CCHC proposal assists Middletown in achieving its plan to have at least 10 percent of its housing inventory consist of low- and moderate-income housing in accordance with § 45–53–3. Substantial and competent evidence exists to support the board's finding that the project is consistent with local needs and adequately addresses health, safety, and environmental concerns.[1]

We have reviewed petitioners' allegation that they were denied a full and fair hearing to voice their objection to the CCHC proposal and we conclude that this argument is without merit. The record reflects that the petitioners were given full opportunity to state their position to the zoning board and to question witnesses. Further, petitioners testified in their own behalf and presented exhibits.

Likewise, we find petitioners' reliance on the decision of the State Housing Appeals Board in *DePetrillo v. Zoning Board of Review of Cranston* unpersuasive. In *DePetrillo* both the Housing Appeals Board and the Zoning Board of Review determined that the proposed project would have a negative impact on the health and the safety of the occupants of the proposed units as well as on the residents of the city as a whole. The board found that the twenty-four-unit project was poorly conceived and inappropriately located in an area in which only cemeteries and farm land were permitted when over half of Cranston was zoned to permit the development by right. None of the concerns present in *DePetrillo* plague the subject proposal.

■ Last, the petitioners argue that the zoning board should have denied CCHC's application because the present zoning ordinance expressly prohibits multifamily dwellings as a use for the subject land. The evidence suggests, however, that the present zoning ordinance is outdated and does not conform to Middletown's recently adopted comprehensive plan. It was for this type of situation that the Rhode Island Legislature enacted § 45–53–1—to remove zoning barriers to the creation of low- and moderate-income housing in each city and town of the state. Accordingly the decision of the zoning board of review to approve CCHC's application for a special exception to build low- and moderate-income housing was fully justified.

For the reasons stated, the petitioners' appeal is denied and dismissed. The papers in the case may be remanded to the zoning board of review and the board is directed to implement its decision forthwith.

---

1. Subsection (b) of G.L.1956 § 45–53–3 provides that local zoning or land-use ordinances are consistent with local needs if they are reasonable in view of (1) the state's need for low- and moderate-income housing, considering the number of low-income persons in the town affected, (2) the need to protect the health and safety of the occupants of the proposed housing or of the residents of the town, (3) the need to promote better site and building design in relation to the surroundings or to preserve open spaces, and (4) the statutory goal of having local zoning ordinances applied as equally as possible to both subsidized and unsubsidized housing.