DECISION
The appellants, James and Gloria Maron (the appellants), appeal from a September 29, 2004 decision by the North Providence Zoning Board of Review (the Board), denying their request for a dimensional variance. Jurisdiction is pursuant to G.L. 1956 §45-24-69.
 Facts and Travel
On October 10, 1978, the appellants purchased a 4,744 square-foot vacant lot on Rosner Avenue in the Town of North Providence, otherwise known as Lot No. 415 on Tax Assessor's Plat 4 in the Land Evidence Records for the Town of North Providence.See quitclaim deed to James and Gloria Maron, dated October 10, 1978. Mr. Nicholas Colaluca (Mr. Colaluca) of Port Chester, New York was the previous owner. See id. On the same day, the appellants' daughter, Ms. Jayne M. Ferrara, purchased an adjacent lot from the same Mr. Colaluca. See Quitclaim Deed to Jayne M.Ferrara, dated October 10, 1978. In 1979, Ms Ferrara constructed a single-family residence on her 4,426 square-foot property.See Building Permit # 5544. The properties are located in an R-80 zone, which means that the minimum lot size requirement is 8,000 square feet. The lots are taxed separately.[1]Hearing Transcript (Tr), dated March 18, 2004 at 148.
On May 5, 2000, the appellants requested a variance from the 8,000 square foot minimum lot size requirement so that they could construct a single-family residence on their lot. FirstApplication for a Variance. The Board conducted a duly noticed hearing on August 17 and September 21, 2000. The record reveals that the Board relied upon a copy of the 1965 Zoning Ordinance for the City of North Providence and a recommendation from the Planning Board to conclude that the two lots had merged by operation of law. Tr., dated September 21, 2000, at 2-4. The Board then denied the appellants' request. Id. at 5. This Court affirmed the Board's decision on Oct. 23, 2002 in a decision entitled James Maron, et al. v. The North Providence ZoningBoard of Review, Armand Milazzo, Chairman, C.A. No.: PC 01-0953.
On November 1, 2002, the appellants filed a motion to reconsider and vacate with this Court. They asserted that the Board had relied upon an inaccurate version of the 1965 Ordinance and that the proper Ordinance did not contain a merger provision. The motion was denied as untimely.
In March of 2004, the appellants once again applied for permission to construct a single-family residence on their vacant lot. See Second Application for Variance. At a noticed hearing on March 18, 2004, the appellants produced a certified copy of the Town Council's minutes from February 8, 1965. Tr.,
dated March 18, 2004, at 145. The minutes contained the 1965 Ordinance, which was adopted by the Town Council in its entirety.Id. Said Ordinance did not contain a merger provision. Id.
One objector, John Santaniello, testified that in 1963 he had been required to merge adjoining lots when he applied for a permit to build a house across the street.[2] Id. at 160. The Board then adjourned the hearing to allow objectors an opportunity to search the town records to find out when a merger provision was adopted. Id. at 178-79. The hearing resumed on May 20, 2004.
At the May 20, 2004 hearing, Mr. Santaniello testified that Mr. Colaluca purchased the adjoining lots in 1961.[3] Tr.,
dated May 20, 2004, at 41. He then contended that Mr. Colaluca illegally subdivided those lots when he sold them separately in 1978. Id. At the hearing, the objectors were unable to explain how a merger provision "appeared" in the 1965 Ordinance. However, the Board unanimously voted to deny the appellants' variance application without addressing the merger provision.[4]Id. at 58.
On September 23, 2004, the Board issued and recorded a written decision on the appellants' application. See Board'sDecision. In its decision, the Board noted that it had viewed the appellants' property and the surrounding area. Id. It then concluded that the proposal (1) would not be in harmony with the Comprehensive Plan; (2) would not substantially serve the public convenience and interest; (3) would be injurious to public health, safety, morals and the general welfare; and (4) would substantially or permanently injure the appropriate use of the surrounding properties. Id. On October 6, 2004, the appellants timely appealed to this Court.
 Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241,245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George ShermanSand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
In conducting its review, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v.Church Community Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting G.L. 1956 § 45-24-69(d)). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Bd. of Review of EastProvidence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962). With respect to questions of law, however, this Court conducts a de novo review; consequently, the Court may remand the case for further proceedings or potentially vacate the decision of the Board if it is "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record." VonBernuth v. Zoning Bd. of Review, 770 A.2d 396, 399 (R.I. 2001);see also G.L. 1956 § 45-24-69(d)(5).
 Analysis
The appellants contend that, pursuant to the 1965 Ordinance and the current Ordinance, their property is buildable because it is a substandard lot of record with access to a public sewer.[5] They further maintain that the Board's decision was arbitrary and capricious because their proposal merely was to build a single family home in an existing residential area and that such development actually would increase the value of the surrounding properties; consequently, they assert that the Board erred in denying its application for a variance.
At the hearing, the appellants once again argued that the 1965 Ordinance did not contain a merger provision and that the individual 1978 conveyances of lots 415 and 416 were valid. Although the objectors failed to demonstrate when a merger provision was added to the 1965 Ordinance, that failure does not alter this Court's conclusion that a valid merger previously had taken place.
It is worth repeating what this Court stated in its previous decision involving these lots:
 "Generally, merger provisions dictate that `contiguous substandard lots undercommon ownership may lose their separate identity and be treated as a single parcel for purposes of zoning area and frontage requirements. . . .' Arden Rathkopf and Daren Rathkopf, The Law of Zoning and Planning § 32.04 (4th ed. 1998). Such provisions `may operate upon contiguous undeveloped lots or upon contiguous lots where one or more of the lots are already developed.' Id. Despite due process, takings and equal protection challenges, merger provisions generally pass constitutional muster. Id.
 Our Zoning Enabling Act of 1991 permits municipalities to require the merger of contiguous lots held in common ownership, unless both lots are improved. G.L. 1956 § 45-24-38. The statute requires that local ordinances `specify the standards, on a district by district basis, which determine the mergers. The standards include, but are not to be limited to, the availability of infrastructure, the character of the neighborhood, and the consistency with the comprehensive plan.' Id. As our State Supreme Court noted in Skelley v. Zoning Bd. of Review of the Town of South Kingston, `[t]he concept of merger of contiguous nonconforming lots in common ownership as an appropriate method to combine nonconforming lots is gaining increased recognition.' 569 A.2d 1054, 1056 (R.I. 1990) (citing 2 Anderson, American Law of Zoning § 9.67 at 307 (3d ed. 1986)). As in other states, Rhode Island merger provisions have successfully weathered constitutional attacks. See generally, Skelley. It is well-settled, therefore, that a properly adopted merger provision puts all current and future owners of substandard, contiguous lots on notice that such lots have joined. Id. Furthermore, if a landowner `thereafter attempts to partition the combined lot by selling one of the originally platted lots, the purchaser does not acquire a buildable nonconforming lot, but rather is barred from developing the lot without first obtaining a special exception or variance.' Roland F. Chase, Rhode Island Zoning Handbook § 66 (1993 
Supp. 2002) (citing R.J.E.P. Associates v. Hellewell, 560 A.2d 353, 355 (R.I. 1989))." James Maron, et al., C.A. No.: PC 01-0953 at 2.
The record reveals that Mr. Colaluca acquired ownership of the adjoining lots on September 23, 1962. This Court takes judicial notice that the Ordinance that was in effect at that time was adopted on September 8, 1959. See Toohey v. Kilday,415 A.2d 732, 734 n. 1 (R.I. 1980) (observing that a court "may take notice of the ordinance without its having been admitted into evidence, since the board itself, as a municipal tribunal, could have `judicially noticed' the regulation enacted by the municipality that created it"). The 1959 Ordinance contained a valid merger provision that provided in pertinent part:
 "Where adjacent land is not in the same ownership so as to form a larger land parcel, a lot smaller than the minimum dimensions and area required by this ordinance which was a lot of record on the effective date of this ordinance may be used for a single family dwelling provided that:
 . . .
 b. Where connection is to be made to a sanitary sewer, the lot shall have a minimum frontage of 40 feet and a minimum area of 3200 square feet." Article VII, Section 2 of the 1959 Zoning Ordinance for the City of North Providence (emphasis added).
The minimum dimension and area required at that time was 6000 square feet. Neither lot 415 nor lot 416 met these minimum requirements, and they both were "in the same ownership so as to form a larger land parcel." Consequently, the evidence demonstrates as a matter of law that the lots validly merged under the 1959 Ordinance and could not validly be subdivided at a later date by Mr. Colaluca.
 Conclusion
After a careful review of the entire record, it is apparent that the Board should have denied the appellants' dimensional variance application on the basis that there was a merger of lots 415 and 416. However, the Board's denial of the application was proper; indeed, considering that there was a valid merger of the lots, had the Board granted the application, it would have done so in excess of its statutory authority. This Court finds that the 1978 partition of the lots was unlawful and that the requested relief could not have been granted absent planning board approval. Consequently, the Board's decision was not in violation of its statutory authority or in excess of its jurisdiction. Substantial rights of the plaintiffs have not been prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] When the properties were purchased from Mr. Colaluca, the minimum lot size requirement was 7,000 square feet.
[2] The City's 1959 Ordinance was in effect in 1963. That Ordinance contained a merger provision.
[3] The lots actually were conveyed to Mr. Colaluca by quitclaim deed on January 23, 1962.
[4] This Court notes that the Board's decision appears to have confused the standard for issuing a variance with that of a special use permit. In light of this Court's ultimate determination in this case, that confusion is of no consequence. Furthermore, this Court concludes that the Board specifically should have ruled on the issue of merger; however, this determination also is of no consequence to the outcome of this case.
[5] Article IV, Section 413 of the current Ordinance provides in pertinent part:
 "A lot smaller that the minimum area and width required by this ordinance, which was a lot of record on the effective date of this amendment, which is separately owned may be used for a single family dwelling in any RS, RL, RG, CL or CG district provided that said lot shall have minimum width of 40 feet and a minimum area of 3,200 square feet, and further provided that connection is to be made to a public water and sanitary sewer."
The language of a similar provision in the 1965 Ordinance was substantially similar.