DECISION
Before this Court is an appeal from a September 7, 2005 decision by the Zoning Board of Review for the Town of Lincoln (the Board), denying a request from Robert G. Jaworski (the Applicant) for a dimensional variance to construct a single-family residence on a substandard lot of record.[1]
The Applicant timely appealed the decision to this Court. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
The property in dispute is located on Boulevard Avenue in the Town of Lincoln, and is otherwise known as Lot 88 on Tax Assessor's Plat 10 (Lot 88). See Dimensional VarianceApplication (Application). Lot 88 is situated in an RL-9 zoning district, which requires properties to be at least 9000 square feet in area and seventy-five feet in width. SeeApplication and Article III, Section 20-52 of the Zoning Ordinance of the Town of Lincoln (the Ordinance). The subject property is a substandard lot of record that was created by deed before the enactment of the Ordinance. Hearing Transcript
(Tr.) at 18-19.
At a duly noticed hearing, the Applicant testified that an existing residence currently straddles two adjacent lots, both of which belonged to his mother. Id. at 6. His parents purchased the house in 1953. Id. at 22. One third of the building is located on Lot 88, the lot at issue in this case; the remaining portion is located on Lot 87. Tr. at 8. According to the Applicant, the building is beyond repair because its foundation is collapsing. Id. at 6. The Applicant wants to demolish the structure and construct two single family homes, one on each individual lot. Id. at 7. Lot 87 is a separate lot of record and is in full conformance with the Ordinance; thus, it does not require any dimensional relief. Id. at 7. Lot 88 consists of 10,800 square feet. Id. at 7. However, because it is only sixty feet in width, the Applicant must obtain relief from the Ordinance's seventy-five foot width requirement before he may develop the lot. Id. at 5. Otherwise, the proposed residence fully complies with the Ordinance's setback and area requirements. Id. at 7.
At the conclusion of the Applicant's testimony, the Chairman of the Board read the Planning Board's recommendation into the record. Id. at 22. Specifically, the Planning Board recommended that
 "The proposed dimensional variance is to clear up the pre-existing nonconformance of this parcel of land. This lot was platted before present day zoning regulations. The Planning Board recommends Approval
of this application. The Board finds that the relief requested will not alter the general character of the surrounding area or impair the intent and purpose of the Lincoln Zoning Ordinance or the Lincoln Comprehensive Plan." Letter from the Planning Board to the Zoning Board, dated August 31, 2005 (emphasis in the original).
Thereafter, several objectors testified. John Zangari testified that he believed that the construction of two houses would ruin his water view and alter the character of the neighborhood. Tr.
at 24-25. James Burgess expressed concern over the logistics of putting in a new foundation on the property and felt that because of the slope of the subject property, the necessary retainer walls would affect the character of the neighborhood. Id. at 27-28. Elizabeth Heroux expressed concern about the putting a foundation on a lot that abuts wetlands and felt that "building two houses . . . does not make any kind of sense." Id. at 29-30.
After the testimony concluded, the Chairman made the following remarks:
 "[R]ecently I've had a lot of problems with this request . . . I know we can't force this owner to merge the two properties but frankly I too just don't understand why you wouldn't merge the two properties.
 I think from an economic point of view although no real estate expert has testified, I think a house lot is about 21,000 square feet which would garner the same kinds of dollars for this person that two separate houses are going to garner. . . ." Id. at 31.
Board Member Kristen Rao found that "to take down one house and build two homes is to realize greater financial gain." Id. at 32. She further found that
 "the general character of the surrounding area would be changed. You're taking down one home and building two, even though its two lots and the residents do think that it will alter the general character of the neighborhood, and since they live there, I think they are familiar with the neighborhood." Id. at 32-33.
Mrs. Rao then discarded the notion that there is no other reasonable alternative to enjoy a legally permitted beneficial use of the property "since there currently exists a single-family home that's been there for over 50 years. Id. at 33.
Thereafter, the Chairman rejected the recommendation of the Planning Board because he found that
 "the facts presented by the folks who live in that neighborhood say otherwise, in that this will make a substantial impact on the community and really create a situation that's very crowded there, and I'm not so concerned about views and so on, but I do think it intensifies an area that we wish wouldn't be so intended in terms of the living space." Id. at 33-34.
Another Board Member, Arthur Russo, Jr., stated that "[t]he fact these two lots have been used together really weighs heavily in my mind. Certainly you can tear down that house if need be and construct one that straddles that same envelope, maybe approach the tax assessor for a merger to lessen the tax burden." Id. at 34.
Subsequently, the Board unanimously voted to reject the Application. On September 7, 2005, a Memorandum of Decision was recorded in the Land Evidence Records. In the Memorandum, the Board stated that the "full text of decision and minutes available in the minutes of the Zoning Board of Review of the Town of Lincoln."[2] The Applicant timely appealed.
 Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241,245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George ShermanSand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
In conducting its review, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v.Church Community Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting G.L. 1956 § 45-24-69(d)). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Bd. of Review of EastProvidence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962).
Finally, it is axiomatic that "a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the actions taken." Kaveny v.Town of Cumberland Zoning Bd. of Review, 875 A.2d 1, 8 (R.I. 2005) (quoting Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001)). These findings are required "so that zoning board decisions may be susceptible of judicial review." Kaveny,875 A.2d at 8 (internal quotations omitted). In situations where a zoning board "fails to state findings of fact, the [C]ourt will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Id. (quotingIrish Partnership v. Rommel, 518 A.2d 356, 359 (R.I. 1986)).
 Denial of the Dimensional Variance
The Applicant challenges the denial of his Application for dimensional relief on several grounds. First, he asserts that he satisfied all of the standards that must be met before a variance may be granted. See Article VIII, Sections 20-185 and 20-186 of the Ordinance. The Applicant next contends that the Board improperly relied upon lay testimony concerning the effect that the proposed permitted use might have on the neighborhood. Finally, the Applicant avers that the decision must be reversed because the Board failed to set forth any written findings of fact.[3] In response to these allegations, the Board asserts that the Applicant failed to meet his burden of establishing the standards necessary for a dimensional variance. Essentially, it contends that the Applicant failed to present competent evidence because he did not put any expert witnesses on the stand.
Article VIII, Sections 20-185 and 20-186 of the Ordinance list the requirements for obtaining a dimensional variance and are analogous to the provisions listed in § 45-24-41(c) and (d). Section 45-24-41 provides in pertinent part:
 "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant . . .
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 (d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that . . . (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief." § 45-24-41(c) and (d).
In seeking dimensional variances, applicants bear "the burden of demonstrating to the satisfaction of the zoning board that there is evidentiary support for the proposition that there are no reasonable alternatives that allow the applicant to enjoy a legally permitted beneficial use of his or her property."Lischio, 818 A.2d at 693 (R.I. 2003). Furthermore, applicants "need show only that the effect of denying dimensional relief amounts to more than a mere inconvenience." Id. at 692. However, "a variance may not be granted to the owner of a substandard lot where such lot was created by the deliberate conduct of the applicant. . . . An area variance may not be granted to solve the problem of an applicant . . . who proposed to divide [her] property into two substandard parcels." Sciaccav. Caruso, 769 A.2d 578, 583 (R.I. 2001) (quoting Rozes v.Smith, 120 R.I. 515, 521, 388 A.2d 816, 820 (1978)).
It must also be remembered that "when seeking dimensional relief for lawfully permitted uses[,] the review should not focus on the use of the parcel because a legislative determination has been made previously that the use is appropriate and does not adversely affect the general character of the area." Lischio, 818 A.2d at 693 (holding that because a mini self-storage facility was a permitted use, its construction would not adversely affect the general character of the surrounding area); see also § 45-24-31(52) (defining a permitted use as "[a] use by right which is specifically authorized in a particular zoning district").
The record reveals that Lot 88 is a substandard lot of record.Tr. at 19. The property is located in an RL-9 zoning district.See Application. Residential construction is a permitted use in RL-9 zoning districts. See Article II, Section 20-31 of the Ordinance. Although other uses also are permitted in RL-9 zoning districts, each and every property must have a minimum width of 100 feet. See id. and Article II, Section 20-52 of the Ordinance.
After reviewing the record, this Court concludes that the Applicant satisfactorily met his burden under § 45-24-41(c) and (d). It is undisputed that the owners never merged Lots 87 and 88.[4] It also is undisputed that the reason that Lot 88 is considered substandard is that it is fifteen feet short of the Ordinance's width requirement. Because of this width shortage, the Applicant has no choice but to obtain dimensional relief in order to enjoy a legally permitted beneficial use of the property; indeed, without the necessary relief, the Applicantnever will be in a position to develop Lot 88. The resulting hardship obviously would amount to more than a mere inconvenience.
Furthermore, there is no evidence that the hardship is the result of any prior action by the Applicant; instead, the hardship is due to the unique characteristics of the property. Moreover, because the proposed permitted use otherwise conforms to the Ordinance, the relief sought is the least relief necessary.
In considering the Application, the Board found that the Applicant primarily was motivated by a desire to realize greater financial gain. See § 45-24-41(c)(2) (stating that the hardship from which relief is being sought must not be "the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain"). Although the Applicant may realize financial gain by developing the lot, denial of the Application would prevent him from enjoying a legally permitted beneficial use of the property and would be tantamount to an indirect taking of the property. SeeV.S.H. Realty, Inc. v. Zoning Bd. of Review of City of Warwick,103 R.I. 16, 20, 234 A.2d 355, 357 (1967) (recognizing "that the legislature, in giving boards of review authority to grant a variance upon a showing of unnecessary hardship flowing from a literal enforcement of the terms of an ordinance, `. . . intended to vest these boards with authority to prevent the indirect taking of land without compensation by depriving the owner of all beneficial use thereof'") (quoting Denton v. Zoning Bd. ofReview of City of Warwick, 86 R.I. 219, 222, 133 A.2d 718, 719
(1957)). Furthermore, "[w]here it is shown that such deprivation would follow a literal enforcement of the ordinance and it does not appear that the interest of the public would be thereby violated, it is the duty of these boards to so exercise their discretion as to avoid confiscation." Id.
Although the Applicant did not present any expert witnesses, it must be observed that "there is no talismanic significance to expert testimony." Restivo v. Lynch, 707 A.2d 663, 671 (R.I. 1998). Where the subject matter is not arcane, inferences can be drawn from factual lay testimony by board members based partly on their own experience and expertise. See id. However, "the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." Salve Regina College v. Zoning Bd. of Review ofCity of Newport, 594 A.2d 878, 882 (R.I. 1991) (quoting Tooheyv. Kilday, 415 A.2d 732, 737 (R.I. 1980)). In the present case, the subject matter was not so arcane that the Board members could not have used their own experiences and expertise to draw inferences from the Applicant's factual testimony. SeeRestivo, 707 A.2d at 671. Consequently, this Court concludes that the Applicant did not need to present expert witnesses to the Board.
This Court also concludes that the construction of a lawfully permissible use on a lot that conforms to area and setback requirements would not violate the public interest. Despite the Board's contention to the contrary, there was evidence that the Applicant's plan to construct a residence on the lot would "not alter the general character of the surrounding area or impair the intent and purpose of the Ordinance or the Lincoln Comprehensive Plan." See Letter from the Planning Board (emphasis added.) The Planning Board's recommendation was consistent withLischio, which held that review of applications for dimensional relief for lawfully permitted uses "should not focus on the use of the parcel because a legislative determination has been made previously that the use is appropriate and does not adversely affect the general character of the area." Id. 818 A.2d at 693. However, the Board rejected the Planning Board's recommendation in favor of unsupported lay testimony from neighboring objectors. This constituted an error of law. See Salve Regina College,594 A.2d at 882.
 Conclusion
After a review of the entire record, this Court finds that the Zoning Board's denial of the dimensional variance was unsupported by the reliable, probative, and substantial evidence, was arbitrary and capricious, and was in violation of ordinance provisions. The Zoning Board's decision also was affected by error of law and was characterized by an abuse of discretion. Substantial rights of the Appellant have been prejudiced. Accordingly, this Court reverses the Zoning Board's decision.
Counsel shall submit an appropriate order consistent with this opinion.
[1] On July 19, 2005, then owner of the property, Daphne A. Jaworski, granted power-of-attorney to her son, Robert G. Jaworski. He filed the Application for dimensional relief in his capacity as her attorney-in-fact. Daphne A. Jaworski is now deceased. On March 30, 2006, a Justice of the Superior Court granted a Super. R. Civ. P. 25(a), motion to substitute Daphne's executrix, Dalphne O. Jaworski, as the plaintiff in this case.
[2] It appears that the term "minutes" refers to the official transcript of the proceeding. A written decision was not filed; however, the transcript contains oral findings and legal conclusions that facilitate this Court's review of the case.See transcript, at 31-35.
[3] As noted above, while there is no written decision in this case, the Board made adequate oral findings to allow this Court to review the decision; consequently, this Court will not reverse the decision on this basis.
[4] In considering the Application, the Board placed much emphasis on the fact that the existing structure straddles Lots 87 and 88; it then improperly suggested that the Applicant should merge the two lots. See Tr. at 31 and 34. Because Lot 87 is a separately deeded piece of property, its ownership is completely irrelevant to the present case. See Article VII, Section 20-158(c) of the Ordinance ("Adjacent lawfully established individual lots in common ownership, which have less than the minimum area requirements, on or after the effective date of this Ordinance, are not required to, but may be merged together by the owner.") (Emphasis added). Since the owners were not required by law to merge the lots, the Board should not have factored the ownership of Lot 87 into its deliberations.