DECISION
Lisa Notarantonio ("Appellant") appeals the November 30, 2006 decision of the Zoning Board of Review of the Town of North Providence ("Board"). The Board granted a dimensional variance to Appellee Quantum Builders Developers, LLC ("Quantum"), to construct a three-unit residence on a lot abutting Appellant's lot. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. For the reasons set forth below, the Court affirms the decision of the Board.
 I Facts and Travel
Appellee Quantum is the owner of real property, listed as Lot 848 on Tax Assessor's Plat 22, and located at 1505 Douglas Avenue in North Providence, Rhode Island ("Property"). Appellant Notarantonio is the owner of real property located at 1515 Douglas Avenue in North Providence, Rhode Island ("Abutting Property"),[1] which abuts Quantum's lot, and is described as Lot 972 on Tax Assessor's Plat 22. Appellant appeals the Board's decision to *Page 2 
grant Quantum's application for a variance of the District Dimensional Regulations to build a three-unit residence.
There previously existed a single-family dwelling on the subject property. Appellant's abutting property contains a single-family dwelling, and Appellant enjoys an easement over the subject property — a common driveway — for ingress and egress. The subject property is located in a "Residential General Zone" ("RG Zone"), which is regulated as follows:
 (4) RG — General or Multi Household District
— This district is intended for high density single dwelling units detached structures located on lots having a minimum land area of 8,000 square feet, or duplex or two-household dwelling units located on lots having a minimum lot area of 10,000 square feet, and multi-household attached dwelling units whose number of units allowed shall be determined by type of unit per required area as provided for in this ordinance, having a minimum land area of 20,000 square feet.
North Providence Zoning Ordinance, Article II, Zoning District Regulations § 201(A)(4). Quantum seeks to build a three-unit household attached dwelling, which requires a minimum land area of 20,000 square feet in an RG Zone. Since the Property contains approximately 18,400 square feet,[2] Quantum applied on October 27, 2004 for a dimensional variance for approximately 1600 square feet.
Hearings were held on Quantum's application between November 2004 and January 2005. At the December 18, 2004 hearing, Quantum amended their original application to construct a four-unit condominium to a three-unit condominium to conform to the Planning Board's recommendation which stated that a "[m]aximum [of] 3 units can conform to [the] comprehensive plan" in the area. Tr. 12/16/04 at 8. On February 8, 2005, the Board voted to approve Quantum's variance application and issued a written decision. *Page 3 
Appellant thereafter filed an appeal of the Board's decision in Superior Court on February 25, 2005. This Court vacated the Board's decision, finding that the Board failed to include in its decision the requisite findings of fact necessary for judicial review.[3] The case was remanded to the Board for reconsideration of the evidence on the record — without additional testimony or evidence — and with the instructions to include in its decision sufficient findings of fact.
The Board reconsidered the matter on September 21, 2006. The Board members affirmed that they had reviewed the transcripts of the testimony from the prior hearings. At the hearing, Board Member Polisena made a motion to grant Quantum's petition, stating in support of his motion, that all of the evidence supported a conclusion that the Applicant had met the requirements for a dimensional variance. The Board then voted unanimously to approve Quantum's application for a variance. On November 30, 2006, the Board issued its written decision, in which the Board discussed the testimony of the parties, and its subsequent findings of fact and conclusions of law, the substance of which follows.
Quantum presented expert testimony from two land surveyors, a registered engineer, and a real estate expert on their behalf. Tr. 12/16/04 at 10-33. In sum, the land surveyors and the engineer testified that the proposed construction would not negatively affect parking, drainage, run-off, etc. Id. The Board noted that the abutters who opposed the petition failed to introduce any contradictory expert testimony from land surveyors or engineers. Board's Decision at 3 (Nov. 30, 2006) (hereinafter "Bd.'s Decision").[4] As such, the Board found that the testimony of the land surveyors and the engineer regarding the plans and specifications for *Page 4 
the three-unit condominium dwelling regarding parking, drainage and run-off, etc. was uncontroverted and ought to be given great weight. Bd.'s Decision at 1-2.
Both Quantum and the abutters presented testimony from real estate experts to prove their respective points. The Board found credible the testimony of Mr. William Floriani, who testified on behalf of the petitioners. Bd.'s Decision at 2. Mr. Floriani testified that a three-unit condominium development at 1505 Douglas Avenue would conform to the neighborhood as Douglas Avenue was shifting towards multi-family residences. Tr. 11/18/04 at 39-41. Mr. Peter Scotti, the abutters' expert, who had testified that the character of the neighborhood was comprised of mainly single-family dwellings, later conceded that the neighborhood included a number of multi-family dwellings. Tr. 11/18/04 at 48, 50.
Three persons — Lisa Notarantonio, Luca Lancellotti, and Vincent Morgera — whose property abuts the subject property, testified in opposition to the variance petition. The Board addressed each of their arguments in turn. Appellant Notarantonio expressed concern regarding the preservation of her easement on the Property, the size of the condominium dwelling, and the proposed use's effect on the character of the neighborhood. Tr. 11/18/04 at 52-54. The Board noted that Quantum downsized the plans from a four-unit to a three-unit condominium dwelling, in keeping with the recommendation of the Planning Board. Bd.'s Decision at 2. The Board dismissed Ms. Notarantonio's testimony that a single-family residence would be more appropriate, noting that a multi-family residence is a permitted use in a RG zone. Id. Finally, the Board reassured Ms. Notarantonio that she would continue to enjoy her duly recorded easement, which is a common driveway on Appellant's lot, and her route of ingress and egress from her garage to Douglas Avenue.Id. *Page 5 
Mr. Lancellotti testified regarding his concerns over flooding and inadequate parking (Tr. 11/18/04 at 52; Tr. 12/16/04 at 38-39), which the Board stated was adequately addressed by the Quantum's experts. Bd.'s Decision at 2. Mr. Morgera testified that the condominiums were not in keeping with the design of the neighborhood (Tr. 1/20/05 at 5-8), to which the Board disagreed, noting that the Quantum's real estate expert testified that the area was a mix of residential and multi-family residences. Bd.'s Decision at 2.
Upon consideration of all of the evidence presented,[5] the Board made the following findings of fact:
 1. The subject property is located at 1505 Douglas Avenue and known as Assessor's Plat 22, Lot No. 848, containing approximately 18,400 square feet more or less, Residence General Limited Zone.
 2. The applicant originally requested permission to demolish the existing structure and construct a four (4) unit structure.
 3. The applicant amended his application to request permission to construct a (3) unit structure
 4. The proposed construction of a three (3) unit structure is in keeping with the Town's Comprehensive Plan.
 5. The construction of a three (3) unit structure would be in keeping with the overall general character of the neighborhood.
 6. An easement presently of record for one of the abutters would be preserved.
 7. The issues of flooding and parking have been addressed by the applicant to the satisfaction of this Board.
Based on these findings, the Board made the following conclusions of law: *Page 6 
 1. That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant[.]
 2. That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 3. That the granting of the variance will not alter the general characteristic of the surrounding area or impair the intent or purpose of the Zoning Ordinance or the Comprehensive Plan of the Town of North Providence.
 4. The relief to be granted is the least relief necessary and further that the hardship that would be suffered by the owner if relief were not to be granted would amount to more than a mere inconvenience.
The Appellant timely appealed the Board's November 30, 2006 decision on December 18, 2006.
 II Analysis A Standard of Review
The Superior Court has jurisdiction to review this appeal pursuant to G.L 1956 § 45-24-69(a). The Court's review of a zoning board decision is governed by § 45-24-69(d). Section 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: *Page 7 
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." DeStefano v. Zoning Bd. ofReview of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
In conducting its review, the trial justice may "`not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. Church Community HousingCorp., 672 A.2d 453, 454 (R.I. 1996) (quoting Section 45-24-69(d)). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Bd. of Review of East Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962). Regarding questions of law, however, this Court conducts a de novo review; consequently, the Court may remand the case for further proceedings or potentially vacate the decision of the board if it is "clearly *Page 8 
erroneous in view of the reliable, probative and substantial evidence of the whole record." Von Bernuth v. Zoning Bd. of Review, 770 A.2d 396,399 (R.I. 2001); G.L. 1956 § 45-24-69(d)(5).
With respect to dimensional variances, the board must observe the following criteria. Section 45-24-41 provides in pertinent part:
 (c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
Furthermore, pursuant to § 45-24-41, "for an applicant to obtain a dimensional variance (also known as a deviation), the landowner needed to show only an adverse impact that amounted to more than a mere inconvenience." Lischio, 818 A.2d at 691.
 B The Board's Decision
The Appellant contends that her property rights have been substantially prejudiced as a result of the Board's erroneous decision. Specifically, Appellant contends that the Board, once again, failed to make adequate findings of fact to justify granting Quantum's petition for *Page 9 
dimensional relief, and further, that Quantum failed to present sufficient evidence to the Board that would satisfy the standards necessary for dimensional relief.
The Appellee Quantum counters that it provided the Board with sufficient evidence in the form of expert testimony for the Board to make its decision. Quantum further states that the Board's thorough decision is proof that the Board reviewed all of the testimony in reaching its factual and legal determinations.
This Court, in making its determination, has reviewed the record in order to determine whether the Board's decision is supported by substantial evidence. DeStefano, 122 R.I. at 245, 405 A.2d at 1170. In its November 30, 2006 decision, the Board discussed the weight it gave to the testimony from the parties and the experts in reaching its findings of fact.[6] The Board sets forth seven descriptive findings of fact in its November 30, 2006 decision instead of the four boilerplate findings of fact stated in its first decision. Bd.'s Decision at 3 (Nov. 30, 2006).
This Court reviews each finding of fact, comparing it with the evidence on the record. The first finding of fact — that the lot is zoned Residence General Limited Zone and contains 18,400 square feet — signifies that the lot is merely 1600 square feet shy of the required square footage to build a multi-unit dwelling in a RG Zone. The second and third findings of fact — that Quantum originally applied to build a four-unit dwelling and later amended its application to request permission for a three-unit dwelling — comports with the Planning Board's recommendation that a three-unit residence on the lot would fit with the comprehensive plan of the area. The Zoning Board accepted the testimony of Quantum's real estate expert that the Douglas Avenue area is comprised of mixed use residential single and *Page 10 
multi-family dwellings. Based on the real estate expert's testimony and the recommendation of the Planning Board, the Zoning Board's fourth and fifth findings of fact state that the proposed three-unit residence is in keeping with the town's comprehensive plan and with the overall general character of the neighborhood.
The last two findings of fact address concerns raised by abutters, including Appellant Notarantonio. The Board, after hearing expert testimony, concluded that Appellant's easement — a driveway to and from Douglas Avenue to her garage — would be preserved. The Court need not address further Appellant's concern over her continued right to enjoy her easement, because Appellant herself fails to mention this concern in her brief. "`Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.'" Kaveny v. Town ofCumberland Zoning Bd. of Review, 875 A.2d 1, 10 (R.I. 2005) (quotingWilkinson v. State Crime Lab. Comm'n, 788 A.2d 1129, 1132 (R.I. 2002)). In any event, the Court is satisfied with the Board's representation and finding of fact that Appellant's easement will be preserved. Finally, the Board stated that concerns regarding flooding and overparking were duly addressed in the hearing to the satisfaction of the Board by Quantum's engineer and land surveyors.
From these findings, the Board concluded that Quantum had satisfied the four elements for a variance on the district dimensional regulations, entitling the applicant to relief. Bd.'s Decision at 4. The first element states "[t]hat the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant." Id. The area, an RG zone, allows for multi-family dwellings so *Page 11 
long as there are 20,000 square feet. Appellee's lot falls only 1600 feet short of this requirement. Likewise, there was reliable, probative, and substantial evidence for the Board to conclude "[t]hat the granting of the variance will not alter the general characteristic of the surrounding area or impair the intent or purpose of the Zoning Ordinance or the Comprehensive Plan of the Town of North Providence."Id.
With respect to the criteria that the relief to be granted is the least relief necessary, Appellant contends that the least relief is a denial of the variance because Quantum is able to construct a two-unit residence on the property without one. As previously discussed, a three-unit residence is a permitted use in a RG Zone, so long as the 20,000 square footage requirement is satisfied. The Supreme Court clarified in Lischio v. Zoning Bd. of Review, 818 A.2d 685, 692 (R.I. 2003),[7] that "landowners who wanted to establish a right to dimensional relief were not required to demonstrate a loss of all beneficial use of the parcel. . . ." Id. at 691 (citing Viti v. ZoningBd. of Review, 92 R.I. 59, 64-65, 166 A.2d 211, 213 (1960)) (emphasis added). Thus, the mere fact that another use could be put to the property is not a controlling factor in the determination of whether Quantum satisfies the criteria for a dimensional variance. Furthermore, the Board acknowledges that Quantum amended its petition to seek approval for a three-unit residence, a less intensive use than the original application for a four-unit residence. Finding that dimensional relief for the 1600 feet would allow Quantum, by right, to construct a four-unit residence, the Board held that a three-unit residence could be viewed as the least relief necessary.
Upon review of the record, the Court affirms that the Board had sufficient evidence before it to conclude that the hardship is not primarily the result of the applicant to realize *Page 12 
greater financial gain and that the hardship that would be suffered by the owner if relief were not to be granted would amount to more than a mere inconvenience. The case at bar is distinguished from von Bernuth v.Zoning Bd. of Review, 770 A.2d 396, 402 (R.I. 2001), which Appellant cites for the contention that the court cannot affirm a zoning board's decision where the court "[could not] determine what evidence that was presented to the zoning board persuaded it that the requirement of § 42-24-41(d)(2) [the mere inconvenience standard] had been met." Here, it is apparent that the difference between the square footage requirement and Appellant's a lot size — 1600 square feet — would create more than a mere inconvenience if the Applicant's petition were denied because of it.
 C The Board's Deliberations
Appellant questions the adequacy of the Board's deliberations on remand. Since the Court did not allow new evidence to be heard, the Board members stated on the record that they had reviewed the transcripts before voting to grant the Appellee's application for a dimensional variance. Thereafter, a decision was written, specifying the Board's findings of fact and conclusions of law. Appellant complains that such procedure hints of a post-hoc rationalization of a pre-determined outcome.
It is the written decision which the Court reviews on appeal. Pursuant to § 45-24-61(a),
 Following a public hearing, the zoning board of review shall render a decision within a reasonable period of time. The zoning board of review shall include in its decision all findings of fact and conditions, showing the vote of each participating member, and the absence of a member or his or her failure to vote. . . . (Emphasis added.) *Page 13 
As previously stated, the Board's decision includes a discussion of the testimony given, which led it to make the subject findings of fact and conclusions of law, as well as the vote of each Board member. Accordingly, the Board complied with the requirements of § 45-24-61(a).
 Conclusion
Upon review of the entire record, the Court finds that the decision of the Board on remand is not clearly erroneous in view of the reliable, probative, and substantial evidence of record, or in violation of statutory provisions. Substantial rights of the Appellant have not been prejudiced. Consequently, the Court hereby affirms the Board's decision. Counsel shall submit an appropriate order consistent with this opinion.
[1] The North Providence Zoning Ordinance defines "abutter" as follows: "[o]ne whose property abuts, that is, adjoins at a border, boundary, or point with no intervening land."
[2] There is some discrepancy regarding the square footage of the subject property. By all accounts, it is somewhere between 18,100 and 18,400 square feet. The Court will refer to the area as 18,400 square feet — the prevalent calculation — for purposes of this decision only.
[3] See Notarantonio v. Reall, et al., No. 05-0932 (J. Gibney) (July 6, 2006) for further factual development. For purposes of this appeal, the Court discusses only the relevant facts at issue.
[4] This Court is not reviewing the Zoning Board's first decision; therefore, the Court will refer to the November 30, 2006 decision as the Board's Decision for purposes of convenience.
[5] Although the Board does not make reference to it in the November 30, 2006 decision, the Court notes that the Board members who issued the original February 8, 2005 decision — five out of six who remain on the Board — stated that they visited the proposed site and surrounding area.
[6] See Notarantonio v. Reall, et al., No. PC-2005-0592 (July 6, 2006) for further discussion regarding the expert testimony.
[7] Our Supreme Court held that R.I. Gen. Laws 1956 § 45-24-41(d)(2), as amended by P.L. 2002, ch. 218, § 1 reinstated the Viti Doctrine.See Viti v. Zoning Bd. of Review, 92 R.I. 59, 64-65, 166 A.2d 211, 213
(1960). *Page 1